[No. 53363-1-I.   Division One.   August 2, 2004.]

*In the Matter of the Dependency of M.J.L.*

JENA LAMAS, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Eric Broman* and *Jennifer L. Dobson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Thomas M. Masco, Assistant*, for respondent.

¶1 GROSSE, J. — The issue before us is whether the juvenile court in the context of a dependency proceeding may order visitation between a dependent child and his or her nondependent sibling over whom the court has no jurisdiction when the nondependent child's parent objects to the visitation. We answer in the negative and reverse.

## FACTS

¶2 Jena Lamas is the mother of two daughters: 16-year-old M.L. and 5-year-old E.L. The girls have different fathers. E.L.'s father, Efren Delgadillo Ocampo, was convicted of molesting M.L. in 2001. After serving his sentence, Ocampo was deported to Mexico. On January 5, 2003, M.L. went to a police station and reported that her mother and Ocampo had reunited, and that Ocampo was visiting her home despite the fact that there was an order in place prohibiting him from contacting M.L. M.L.'s statement to the police was somewhat unclear as to whether she had run away from home, or whether her mother had asked her to leave. In either event, when police contacted Lamas, she stated that she would not allow M.L. to return home.

¶3 As a result, M.L. filed a Children in Need of Services (CHINS) petition on January 7, 2003. M.L. was placed out of the home and the court ordered visitation between M.L. and E.L., but no visitation occurred during the pendency of the CHINS proceeding.

¶4 On August 1, 2003, the Department of Social and Health Services (DSHS) filed a petition alleging that M.L. was a dependent child. No dependency petition was ever filed as to E.L.

¶5 At the 72-hour shelter care hearing on August 4, 2003, the court again ordered visitation between M.L. and E.L. At the 30-day shelter care hearing on September 3,

2003, the court learned that no visitation had taken place between M.L. and E.L., and ordered DSHS to seek a bench warrant for Lamas if she did not arrange for visitation to occur. Over the next several months, M.L. and E.L. had two supervised visits.

¶6 On September 30, 2003, Lamas signed agreed orders of dependency and disposition as to M.L. Neither M.L. nor Lamas wished to have any contact with the other, and neither wished to reunite. The sole issue that the parties disagreed on was visitation between M.L. and E.L. Lamas did not want her younger daughter to have any contact with M.L., contending that M.L. was a bad influence on E.L. Lamas also contended that the court was without authority to order visitation because the court did not have jurisdiction over E.L.

¶7 At a hearing on October 13, 2003, the court heard testimony from Lamas, M.L., and Dick Thomas, a Department of Child and Family Services social worker. The court found that visitation would be in M.L.'s best interests, that there was no reasonable cause to believe that E.L.'s health, safety, or welfare would be jeopardized by visitation, and that efforts to reunite M.L. and Lamas would not be hampered by the visitation. The court did not appoint a guardian ad litem to represent E.L.'s interests and did not make findings as to whether the visitation would be in E.L.'s best interests. The court concluded that it had the authority to order the visitation notwithstanding the fact that it had no jurisdiction over E.L. and ordered supervised visitation between M.L. and E.L. as well as weekly telephone contact between the two.

¶8 Lamas appeals.

## ANALYSIS

¶9 It is undisputed that the juvenile court had no

jurisdiction over E.L.[1] The State has not filed a dependency petition as to E.L., and the State has not alleged that Lamas is an unfit mother as to E.L. A fit parent is presumed to act in the best interests of his or her child,[2] and has a right to limit visitation of his or her children with third persons.[3] The question before us is whether the juvenile court may order visitation between a dependent child and a nondependent sibling, over whom the court has no jurisdiction, over the objections of a fit parent.[4]

¶10 Because this is an issue of first impression in Washington, we may look to guidance from cases from other jurisdictions.[5] The Supreme Court of Nebraska considered this issue under strikingly similar facts in *In re Interest of D.W.*[6] D.W. was found to be a delinquent child within the meaning of former Nebraska Revised Statutes of 1943, chapter 43, section 43-247(3)(b).[7] At the request of D.W.'s guardian ad litem, the court ordered visitation over the objections of the parents, who believed that visitation would not be in their daughter's best interests. As in this case, the

---

[1] *See, e.g., In re Welfare of Key*, 119 Wn.2d 600, 608, 836 P.2d 200 (1992) (holding that the juvenile court initially obtains jurisdiction over a minor when he or she is found to be a dependent or delinquent child); *In re Welfare of Warren*, 40 Wn.2d 342, 343, 243 P.2d 632 (1952) (holding that the juvenile court has no jurisdiction over a minor unless the minor is either delinquent or a dependent child); *McDaniel v. McDaniel*, 64 Wn.2d 273, 276-77, 391 P.2d 191 (1964).

[2] *Troxel v. Granville*, 530 U.S. 57, 68, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). *See also Parham v. J.R.*, 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979).

[3] *In re Custody of Smith*, 137 Wn.2d 1, 21, 969 P.2d 21 (1998), *aff'd sub nom., Troxel*, 530 U.S. 57.

[4] The State contends that the standard of review is abuse of discretion. But issues of statutory interpretation and jurisdiction are questions of law that we review de novo. *See, e.g., Crosby v. County of Spokane*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999).

[5] *See, e.g., In re Parentage of L.B.*, 121 Wn. App. 460, 481, 89 P.3d 271 (2004) (citing *In re Welfare of Colyer*, 99 Wn.2d 114, 119, 660 P.2d 738 (1983)).

[6] 249 Neb. 133, 542 N.W. 407 (1996).

[7] Former Neb. Rev. Stat. § 43-247(3)(b) provides that the juvenile court has jurisdiction over a juvenile "who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian, or custodian; who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school."

court did not appoint a guardian ad litem to protect the sister's interests and did not consider whether visitation was in the sister's best interests. The Court of Appeals affirmed, and the parents sought review in the Nebraska Supreme Court.

¶11 The Supreme Court reversed on the basis that the juvenile court had no jurisdiction over the sister, and that the court therefore did not have the power to order the parents to comply with the order requiring them to make their daughter available for visitation.

> As restated, the issue before this court is whether the power of a juvenile court over parents under its jurisdiction extends to interfering with those parents' rights over a nonadjudicated child. We find that it does not when the juvenile court lacks personal jurisdiction over the nonadjudicated child.
>
> There is nothing in the pleadings or record of this case to justify a juvenile court's assuming jurisdiction over an uncharged and unadjudicated child such as D.W.'s sister.[8]

In so holding, the court noted that the relationship between a parent and child is constitutionally protected, and that the protection applies to the relationship between a parent and each child as an individual. "Just because one child in a family is adjudicated as a child coming under the Nebraska Juvenile Code does not provide a juvenile court carte blanche jurisdiction over the adjudicated child's unadjudicated siblings."[9]

¶12 The State contends that *In re D.W.* is inapposite because D.W. was a delinquent, rather than a dependent, child. But this is a distinction without a difference under Nebraska law. Dependent and delinquent children are treated virtually identically under Nebraska law.[10] And contrary to the State's assertion, the parents were parties

---

[8] *In re D.W.*, 249 Neb. at 137.

[9] *In re D.W.*, 249 Neb. at 138.

[10] Indeed, the definitions of both are contained in the same statutory subsection. *See* former NEB. REV. STAT. § 43-247(3).

to the proceeding and were before the court in *In re D.W.*[11] We agree with the reasoning of the Nebraska court and find the State's attempts to distinguish it unpersuasive.

¶13 While the State does not contend that the juvenile court had jurisdiction over E.L., it nonetheless argues that RCW 13.34.130(3)[12] "plainly confers jurisdiction on the dependency court to order visitation between siblings when it is determined to be in the best interests of the dependent child." RCW 13.34.130(3) provides:

> If the court has ordered a child removed from his or her home pursuant to subsection (1)(b) of this section, the court shall consider whether it is in a child's best interest to be placed with, have contact with, or have visits with siblings.
>
> (a) There shall be a presumption that such placement, contact, or visits are in the best interests of the child provided that:
>
> (i) The court has jurisdiction over all siblings subject to the order of placement, contact, or visitation pursuant to petitions filed under this chapter or the parents of a child for whom there is no jurisdiction are willing to agree; and
>
> (ii) There is no reasonable cause to believe that the health, safety, or welfare of any child subject to the order of placement, contact, or visitation would be jeopardized or that efforts to reunite the parent and child would be hindered by such placement, contact, or visitation. In no event shall parental visitation time be reduced in order to provide sibling visitation.

The State contends that, while the presumption that the visitation is in the best interests of the child applies only when the court has jurisdiction over the siblings or when the parents agree, RCW 13.34.130(3) allows the court to order sibling visitation in *all* cases wherein a dependent child is ordered removed from his or her home (including instances wherein the court has no jurisdiction over the

---

[11] *See, e.g., In re D.W.*, 249 Neb. at 137 ("The Court of Appeals was also correct when it held that the juvenile court had jurisdiction over D.W.'s parents."); *See also* former Neb. Rev. Stat. § 43-247(5) (juvenile court has jurisdiction over the parent, guardian, or custodian who has custody of any juvenile described in the section, e.g., delinquent and dependent children).

[12] Former RCW 13.34.130(3) (2002) (amended by Laws of 2003, ch. 227, § 3).

sibling(s) of the dependent child, and where the parent(s) do not agree to the visitation), if the visitation is in the best interests of the child.

¶14 RCW 13.34.130 does not explicitly provide the juvenile court with jurisdiction to enter an order for placement, visitation, or contact with a sibling over whom the court has no jurisdiction. And the State does not explain how the court would have jurisdiction to enter an order as to a person over whom the court has no jurisdiction. We do not find the State's interpretation to be reasonable. At best, the statute is ambiguous. When a statute is ambiguous, a court may resort to the rules of statutory construction, legislative history, and case law to assist in interpreting it.[13]

¶15 Prior to July of 2003, RCW 13.34.130(3) provided:

> If the court has ordered a child removed from his or her home pursuant to subsection (1)(b) of this section, the court shall consider whether it is in a child's best interest to have contact or visits with siblings. The court must consider ordering that such contact or visits take place provided that:
>
> (a) The court has jurisdiction over all siblings subject to the order of contact or visitation pursuant to petitions filed under this chapter;
>
> (b) Contact or visitation is in the best interests of each child covered by the court's order; and
>
> (c) There is no reasonable cause to believe that the health, safety, or welfare of any child subject to the order of visitation would be jeopardized or that efforts to reunite the parent and child would be hindered by such visitation. In no event shall parental visitation time be reduced in order to provide sibling visitation.

The intent of the statutory amendments was to recognize the importance of sibling bonds and to preserve sibling relationships between dependent children.[14] Under the law

---

[13] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

[14] *See, e.g.*, 1 LEGISLATIVE DIGEST AND HISTORY OF BILLS, 58th Leg., at 291-92 (Wash. 2003).

as it existed prior to 2003, the court was not required to consider placing children with their siblings who had also been placed out of the home.[15] The legislature wished to cure this deficiency, and to create a presumption that visitation with siblings who are also placed out of the home is in the best interests of the dependent child, unless to do so would jeopardize the child's health, safety, or welfare.[16] Clearly, it was not the intent of the legislature to expand the court's jurisdiction over nondependent children. Expansion of the court's jurisdiction is not mentioned anywhere in the legislative history of the amendments to RCW 13.34.130. The legislative history of RCW 13.34.130(3) does not support the State's interpretation of the statute.

¶16 Further, the State's reading of the statute would result in absurd results, contrary to well-established principles of statutory construction.[17] Under the State's interpretation, the juvenile court could order visitation with a sibling not only when the court had no jurisdiction over the sibling, but also when there was reasonable cause to believe that the health, safety, or welfare of the sibling would be jeopardized, or when efforts to reunite the parent and child would be hindered by the visitation. This interpretation is simply not reasonable.

¶17 The only reasonable interpretation of RCW 13-.34.130(3) is that it allows the juvenile court to order sibling visittion when the court has jurisdiction over both siblings or when the parents agree, and when there is no reasonable cause to believe that the visitation would jeopardize the health, safety, and welfare of either sibling. In those circumstances, the statute creates a presumption

---

[15] *See, e.g.,* S.B. Rep. E.S.S.B. 5779, 58th Leg., Reg. Sess. (Wash. 2003).

[16] S.B. Rep. E.S.S.B. 5779, 58th Leg. Reg. Sess. (Wash. 2003); H.B. Rep. E.S.S.B. 5779, 58th Leg., Reg. Sess. (Wash. 2003).

[17] "A statute should not be given an interpretation which would make it an absurdity when it is susceptible of a reasonable interpretation which would carry out the manifest intent of the legislature." *Martin v. Dep't of Soc. Sec.,* 12 Wn.2d 329, 331, 121 P.2d 394 (1942).

that the visitation is in the best interests of the child. Where, as here, the court has no jurisdiction over the nonadjudicated sibling, and where the parents do not agree to the visitation, the juvenile court does not have the authority under RCW 13.34.130(3) to order visitation between the dependent child and her nondependent sibling.[18] Because the juvenile court had no jurisdiction over E.L., the court erred in ordering visitation over Lamas's objection. We therefore reverse.

¶18 Reversed.

Cox, C.J., and Ellington, J., concur.

---

[18] The parties have not addressed, and we do not decide, whether M.L. may have alternative means for seeking visitation with her sister.